CLARENCE H. MOHR *v.* LEONA NEWTON MOHR

(No. 8577)

Submitted September 7, 1937. Decided October 5, 1937.

*C. E. Mahan, Jr.*, for appellant.
*F. N. Bacon*, for appellee.

Fox, Judge:

This is a suit in which the plaintiff seeks a divorce from the defendant on the grounds of adultery and other misconduct. His bill filed at May Rules, 1935, charges, upon information and belief, one specific act of adultery on March 11, 1935 and contains other vague and indefinite charges which, on account of such vagueness, need not be considered. Later, by an amended bill, he charges numerous additional acts of adultery. The defendant filed her answer and cross bill, denying in her answer all of the acts and conduct charged against her, and in her cross bill, alleges adultery and other misconduct against the plaintiff. These charges were denied by him. In these pleadings, both parties asked for a divorce. Early in the litigation, modest sums were allowed the defendant for suit money and attorney fees, but the question of any allowance for support, maintenance and alimony to the defendant was reserved until the trial of the case on its merits.

The suit was heard in open court, in the presence of the divorce commissioner of the county. There is a great mass of testimony. The divorce commissioner submitted a report, in which he recommended that relief be denied both parties. In effect, he found each party guilty of

such conduct as would, in the absence of misconduct on the part of the other, warrant a decree of divorce at the suit of the innocent party. Exceptions to the report were filed by both parties, and the court, without specifically acting on these exceptions, entered a decree dissolving the marriage between the plaintiff and the defendant and divorcing them from the bonds of matrimony. By such decree, the plaintiff was required to pay the costs of the suit, but was relieved from the payment of alimony to the defendant. From this decree, the defendant prosecutes this appeal.

It would serve no good purpose to detail the evidence upon which the court below entered the decree complained of. We hold such evidence to be sufficient to justify the decree, were the conduct of the plaintiff not also in issue. The defendant contends that the only specific evidence tending to convict her of adultery was the uncorroborated testimony of a prostitute; but aside from the question as to whether or not the witness Nunnery was, in legal contemplation, a prostitute, her testimony is corroborated in practically every instance by the admission of the defendant of various circumstances and conditions creating an opportunity for the offense charged against her.

The defendant charges that the plaintiff, shortly prior to the separation of the parties, had contracted a venereal disease. She stated that she herself had never had such a disease, and thereby, in effect, that she did not communicate it to him. Although denied by him in his answer to the cross bill, and in his testimony on cross examination, such denial and testimony, when considered with the fact that opportunity to refute such charge, if it could be refuted, was available to the plaintiff, is not convincing and forces the conclusion that such disease was contracted by him through an act of adultery. From the defendant's testimony, it appears that the plaintiff had stated to her that he had consulted a physician who lived in Fayette County who treated him for a disease of the kidneys, and furnished him with medicine and the means of using it. There is further testimony that the medicine and equipment so furnished were those commonly used

for certain venereal diseases and that they were used by the plaintiff. The testimony of the defendant as to the possession by the plaintiff of this medicine and equipment is corroborated by a brother of the defendant, and by a physician who examined the medicine and equipment which were alleged to have been used by the plaintiff. This made a *prima facie* case against him. He contented himself with the denial of these charges in his answer to the cross bill, and when interrogated upon cross examination. It is significant that he did not volunteer such denial in his own testimony in chief. It is more significant still that he did not produce the physician, who, according to the testimony, was available and could have been produced by him, and who could have settled the truth or falsity of this charge. It may be questioned whether the evidence of this physician was available to the defendant. At common law, such evidence would have been available, and is generally considered available in the absence of a statute on the subject. In this state, we have a statute, applicable to justice of the peace practice, making a physician or surgeon incompetent to testify concerning any communication made to him by a patient which was necessary to enable him to prescribe and treat the case, without the patient's consent. Code 50-6-10. No statute exists in this state governing such testimony in courts of record. It is clear, however, that no question as to the competency of the physician to testify could have arisen had the plaintiff elected to offer him as a witness. His offer of the witness would have been a waiver of any confidential relation or communication. 28 R. C. L. 542; 5 Wigmore on Evidence, 219.

It is fundamental that "where a party to a controversy fails to examine a material and important witness in his behalf, it will be presumed that the evidence of such witness, if given, would be adverse to such party." 8 Michie's Digest, 235. This statement of the law is supported by a long line of cases in this state, which it seems unnecessary to cite; but the recent cases of *Miller* v. *Miller*, 111 W. Va. 338, 161 S. E. 566 and *Workman* v. *Clear Fork*

*Lumber Co.*, 111 W. Va. 496, 163 S. E. 14, clearly state this principle, which, applied to this case, supports the conclusion that the establishment of the *prima facie* case by the defendant on this point was not met and overcome by the plaintiff's mere denial, when a disinterested witness, whose statement on the matter could not have been questioned by either party, was available and could have been used by the plaintiff to refute this charge, if the same was untrue. His failure to do so serves to bring into full force the presumption that the testimony of the physician would not have supported his denial, and convicts him of the charge and the court below should have so held.

Holding as we do that both parties to this litigation were guilty of such misconduct as would have entitled either to a decree of divorce had the other been innocent, we are confronted with this question: Should the court have refused to enter a decree in favor of either party? The decree complained of, in effect, relieves both the parties of the result of their misconduct. The plaintiff is granted the relief asked for, but the decree dissolving the bonds of matrimony left both parties free to remarry after the expiration of sixty days, thereby, in our judgment, overriding the wise and salutary holdings of our courts which, in a case like this, prevent relief to either party.

> "Since a divorce cannot be granted if the parties are equally at fault, it follows that if complainant has been guilty of the same offense as defendant, there can be no divorce."

19 C. J. 95, Section 221.

> "By all opinions, English and American, one shown to be guilty of adultery cannot have a divorce for adultery committed by the other. And it makes no difference which was the earlier offence, or even that the plaintiff's followed a separation which took place on discovery of the defendant's. It has also been held, and it is little questioned, that a single act of adultery is

"sufficient in bar, whatever the extent of guilt on the other side."

2 Bishop on Marriage and Divorce, 169, Section 350.

"It is a general principle applicable to all divorce proceedings, that the spouse petitioning for relief must have been both clear of blame and consistent in availing himself or herself of the other's matrimonial delinquency. By 'clear of blame' we may mean (1) without substantial fault in causing the offence complained of, and, furthermore, (2) free from other misconduct equally reprehensible under the divorce laws. For if both parties have the same right to divorce, the rule is that neither has, since only an innocent spouse may properly ask the court to interpose."

2 Schouler, Domestic Relations, 1909, Section 1721. These statements are supported by the following authorities: *Kirn* v. *Kirn*, 138 Va. 132, 120 S. E. 850; *Martin* v. *Martin*, 33 W. Va. 695, 11 S. E. 12; *Wass* v. *Wass*, 41 W. Va. 126, 23 S. E. 537; *Hall* v. *Hall*, 69 W. Va. 175, 71 S. E. 103, 34 L. R. A. (N. S.) 758; *Maxwell* v. *Maxwell*, 69 W. Va. 414, 71 S. E. 571; *Murrin* v. *Murrin*, 94 W. Va. 605, 119 S. E. 812; *Roberts* v. *Roberts*, 99 W. Va. 204, 128 S. E. 144; *Edwards* v. *Edwards*, 106 W. Va. 446, 145 S. E. 813. Many of our own cases, following general authority, hold that inequitable conduct, short of cause creating ground for divorce, may prevent a plaintiff from obtaining relief on the theory that a plaintiff coming into a court of equity must do so with clean hands. In face of these authorities, the decree of the court below cannot be sustained.

It is not necessary to consider the relative misconduct of the parties to this suit. Both were guilty of conduct against which the other, if innocent, was entitled to relief, and, in such a situation, neither was entitled to relief. It may be that the refusal of relief to either party will create a situation not conducive to the best interests of the litigants, but it will establish that the rules governing the granting of divorces in this state cannot be set aside for the personal convenience of two people

whose conduct, to say the least, has not been commendable. The result of a decree refusing either relief will be to wipe out the past and give each of the parties an opportunity to begin anew in their relations with each other. The door to reconciliation is open, and if either should, in good faith, offer reconciliation and be refused by the other, that refusal would, in law, be equivalent to desertion, and in due course of time an opportunity be given for a separation, provided the party seeking a separation comes into court with clean hands. The application of the rule herein announced may, in individual cases, bring about results which neither law nor good morals would suggest, but the rule so long invoked, denying relief to parties, each of whom are not without guilt, cannot be lightly set aside. The decree of the court below will have to be reversed.

The refusal to grant relief to either party applies to the allowance of fees and alimony. The court made no allowance to the defendant for maintenance, support and alimony, but did require the plaintiff to pay the costs of the suit, including the expense of this appeal. Inasmuch as the bill must be dismissed, the action of the court below in refusing to allow such maintenance, support and alimony cannot be disturbed.

It is therefore ordered that the decree of the circuit court of Fayette County be reversed and the original and amended bills of the plaintiff and the cross bill of the defendant be dismissed.

*Reversed; bills dismissed.*