382 S.E.2d 91

**Ethelyn Lou RALEY**

v.

**Ross J. RALEY.**

**No. 18860.**

Supreme Court of Appeals of
West Virginia.

July 3, 1989.

Robyn Ruttenberg, Robinson & Dickinson, Wheeling, for Ethelyn Lou Raley.

Paul C. Camilletti, Camilletti & Sacco, Wheeling, for Ross J. Raley.

PER CURIAM:

This is an appeal by Ethelyn Lou Raley from two orders of the Circuit Court of Marshall County in a divorce proceeding. One order granted the appellant 14% of her husband's investment-plan account as her equitable marital share of that account. On appeal, the appellant claims that this 14% award was unsupported by the evidence. The second order denied the appellant alimony. On appeal she claims that the trial court erred in entering this order. After reviewing the record, the Court finds that there was insufficient evidence to support the trial court's equitable distribution award and reverses the court's judgment on that ground.

This is a sequel to this Court's decision in *Raley v. Raley*, 175 W.Va. 694, 338 S.E.2d 171 (1985). In that case the Court determined that the appellant was entitled to an equitable-distribution share of her hus-

band's investment or thrift account with his employer, Consolidation Coal Company. The Court ruled that the present value of the investment account at the time of the divorce decree was to be determined and that the account was to be equitably distributed on the basis of the parties' economic contributions to the marriage, with deductions to be made for alimony previously paid by the husband. The exact method of distribution was delineated in note 3 of *Raley v. Raley, Id.*, as follows:

[O]n remand, the trial court must determine the present value of the appellee's investment or thrift account at the time of the final decree, and award to the appellant an amount which represented the proportion of her economic contribution to the marriage less the amount of alimony paid by the appellee subsequent to the final decree which was based on the court's misclassification of the distributions from the investment or thrift account as income. If the court finds that it would be inequitable to require lump sum payment of this amount, an award of periodic payments or direction that a portion of future monthly distributions be paid directly to the appellant in satisfaction of this equitable division would be appropriate.

After rendering the 1985 decision in *Raley v. Raley, supra,* this Court in *Cross v. Cross,* 178 W.Va. 563, 363 S.E.2d 449 (1987), examined the method by which pension or investment accounts should be distributed. The Court stated in syllabus point 4 that "[a]lthough *W.Va.Code,* 48–2–1 [1984] and *W.Va.Code,* 48–2–32 [1984] did not specifically mention pension plans as marital property available for equitable distribution, these two *Code* sections were broad enough to encompass pension plans." The Court stressed the desirability of disentangling the parties from one another as quickly and cleanly as possible. The Court also, while recognizing that each case presented peculiar facts and problems, suggested certain guidelines which should generally be followed in making a distribution. The first of these was that: "The distribution should generally be based on the contributions made during the mar-

riage." *Cross v. Cross, supra,* 178 W.Va. at 569, 363 S.E.2d at 455.

Because the Court in *Cross v. Cross* indicated that general contributions, rather than economic contributions, were to be the basis for a distribution, it deviated from the principles of distribution set forth in *Raley v. Raley, supra.* The deviation was based upon an extensive consideration of the equities involved in the distribution of investment accounts as well as upon legal principles as they evolved in other jurisdictions.

In *Cross v. Cross, Id.,* the Court also discussed the methods by which the share of each party could be paid. In syllabus point 5 the Court stated:

When a court is required to divide vested pension rights that have not yet matured as an incident to the equitable distribution of marital property at divorce, the court should be guided in the selection of a method of division by the desirability of disentangling parties from one another as quickly and cleanly as possible. Consequently, a court should look to the following methods of dividing pension rights in this descending order of preference unless peculiar facts and circumstances dictate otherwise: (1) lump sum payment through a cash settlement or offset from other available marital assets; (2) payment over time of the present value of the pension rights at the time of divorce to the non-working spouse; (3) a court order requiring that the non-working spouse share in the benefits on a proportional basis when and if they mature.

After remand of the present case by this Court, the Circuit Court of Marshall County, on August 7, 1986, conducted a hearing in the matter. During the hearing, the parties agreed that the value of the investment account was $208,526.62. The appellant presented evidence showing that she had made an economic contribution to the marriage in the amount of $55,245.34 from earnings in various jobs. The appellant's husband, through his attorney, took the position that he had contributed $346,-000.00 to the marriage. Based on these figures, the trial court ruled that the appel-

lant had contributed 14% of the marital assets and that her husband had contributed 86%. In accordance with this finding, the trial court awarded the appellant 14% of the agreed upon value of the investment account, less alimony paid by the appellant's husband.

In the present proceeding, the appellant takes the position that the court's 14% was unsupported by the evidence. She argues that although her husband, through counsel, indicated that he had contributed $346,-000.00 to the marriage, he did not actually offer evidence on that contribution and that there was no proper evidence of his contribution before the court.

■ A review of the record supports the appellant's contention. The appellant's husband's attorney prepared a brief estimating that projections from social security records showed that the appellant's husband had contributed $346,000.00 to the marriage, and during the hearing he stated:

> And, in my Brief, I have projected those figures. I have, first of all, projected the formula and, secondly, projected the figures. Mr. Raley earned, subject to confirmation by the Social Security Administration, Mr. Raley earned Three Hundred Forty–Six Thousand Dollars ($346,000.00) during the course of the marriage, and, the total earnings of both parties, and Your Honor, these figures are in my Brief, was Four Hundred One Thousand Dollars ($401,000.00).

A review of the record shows that there was no actual evidence verifying the husband's earnings and no documentation from the Social Security Administration supporting the projections. Only the representations and the brief of the appellant's husband's attorney were presented to the court.

■ In syllabus point 7 of *State ex rel. Cecil v. Knapp,* 143 W.Va. 896, 105 S.E.2d 569 (1958), this Court clearly stated that: "In suits for divorce, as in suits in equity in general, all orders and decrees must be justified by the pleadings and by the proof."

In the present case, the actual contribution of the appellant's husband is critical to the distribution of the investment or the thrift account. Because this contribution was in no way established by the proof, this Court concludes that the decision of the Circuit Court of Marshall County must be reversed and this case must be remanded for reconsideration of the distribution of the thrift account. Since the Court in *Cross v. Cross, supra,* more extensively explored the principles involved in the distribution of accounts such as the one involved in the present case than it did in *Raley v. Raley, supra,* the Court believes that on remand the trial court should be guided by the *Cross* concepts in determining the appellant's share of the investment account.

The Court notes that the appellant also claims that the circuit court abused its discretion in failing to consider her claim for alimony. *West Virginia Code,* 48–2–15, indicates that an award of alimony shall not be disproportionate to a party's ability to pay. In the present case, the appellant's husband's ability to pay is potentially impacted by the percentage of the investment or thrift account which he receives. Since that percentage is not yet finally determined, this Court cannot conclude that the circuit court erred in failing to accede to the appellant's alimony claim.

For the reasons stated, the judgment of the Circuit Court of Marshall County as it relates to the distribution of the investment account is reversed, and this case is remanded for the taking of further evidence on the parties' contributions to the marriage and for distribution of the investment or thrift account in accordance with the principles set forth in *Cross v. Cross, supra.*

Reversed and remanded with directions.